## PARENT v. PICOTTE.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1918.)

No. 5106.

1. EQUITY ⊙⟶293—PLEADING—AMENDMENTS.

Where complainant was entitled to no relief under the evidence, the denial of an amendment to the bill, at close of testimony, as to a certain matter, and changing the prayer for relief, was not error.

2. QUIETING TITLE ⊙⟶10(1)—TITLE OF PLAINTIFF.

Plaintiff's suit to establish title to and regain possession of Indian lands allotted and patented to the defendant can be maintained only on the strength of complainant's title, and the weakness of defendant's title is immaterial.

3. INDIANS ⊙⟶27(6)—INDIAN LANDS—ALLOTMENT.

Evidence *held* insufficient to show that complainant selected, and applied for as her allotment, Indian lands allotted to defendant.

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Suit by Josephine Parent against Irene L. Simmons Picotte. From a decree for defendant, complainant appeals. Affirmed.

Thomas L. Sloan, of Washington, D. C., and H. C. Brome, of Worland, Wyo., for appellant.

Edward E. Wagner, of Sioux Falls, S. D., for appellee.

Before HOOK and STONE, Circuit Judges, and MUNGER, District Judge.

STONE, Circuit Judge. Appeal from dismissal, upon the merits, of a bill by Josephine Parent to establish title and regain possession from Irene L. Simmons Picotte and her tenant of land allotted and patented from the Yankton Sioux lands.

Appellant claims that she is a Yankton Sioux mixed-breed; that she selected and applied for allotment of this tract in 1892; that defendant Picotte, to whom the land was allotted and patented, was not qualified to receive an allotment.

[1] At the close of the testimony appellant was denied an amendment to the bill. The object of this offer was, as stated in the printed argument, not "for the purpose of introducing new evidence, but in order that the complainant might receive appropriate relief upon the case as made by the pleadings and proof." The bill alleged a written application for allotment. The amendment sought to vary this to an allegation that it was written or oral. There was no testimony whatever of any oral application, so that this amendment would have been futile. The amendment also contemplated a change in the prayer. As the appellant was not entitled to any relief, this amendment would have been of no value.

[2] Counsel have discussed at length the weakness of the right of appellee to the land. The primary issue in a cause of this character is the strength of complainant's title. As we are unable to find that

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

complainant has any rights to this land, we need not discuss the standing of the defendants in that regard.

[3] Appellant's rights involve two propositions: Was she entitled to an allotment; and, if so, did she select and apply for this tract of land. She must maintain both. A careful examination of all of the testimony shows the following as all of the testimony as to the selection and application for this particular tract. Mrs. Zallie Dripps, first cousin to appellant, testified:

"I know about Mrs. Parent making a selection of land for allotment. In 1892 Mrs. Parent came to my mother's home on the Ponca reservation; Charles Rulo and myself drove over to the Yankton reservation. Walter Archorn, grandfather of the defendant, it was through knowledge from him that we selected this land. We drove over to about where the description of this land we supposed was. My brother Charlie walked around. We had a spade and looked for the corners of the survey, and he found what he thought was the corner of this land, and he put two or three mounds there, and we went down to the agency. I left the application with the agent in charge. We stayed all night with my cousin, Susan Fredrick. Mr. Foster, I think, was in charge of the agency. He took the paper and told us this land was allotted, and he didn't think there was any use to put in an application, but he would look after it for her. He would see about it. I made the application in writing for Josephine Parent. For the southeast quarter—

"Mr. Wagner: I object that the application would be the best evidence.

"The Court: Yes.

"I have not seen the application since. I made a number of applications since, so I never made a search for it. No; I wasn't able to find the original application. The application was made in the spring of 1892, April or May. It was during the allotments were being made. Mr. La Rochelle told us that there was land unallotted, but the agent in charge told us it was all allotted. Mr. Foster said he would look after it and write us, but we never received a letter from him."

The agent testified that no such application could be found in the office files, where it naturally would and should be. No attempt was made at improvements upon the land until 1913.

In our judgment the trial court rightfully ruled that, as against the patent to appellee, no selection and application for this land was shown by the above proof.

The judgment is affirmed.